GEORGE BULLOCK, Appellant, *v.* JAMES S. COOLEY, as District Superintendent of the First Supervisory District of Nassau County, and Others, Respondents.

Second Department, June 21, 1918.

Schools — consolidation of school districts — districts separated by body of navigable water cannot be consolidated — Education Law construed — " adjoining " defined — party — right of school district trustee and taxpayer to maintain action — decision of Commissioner of Education open to judicial review — process — failure of plaintiff to state official capacity.

The authority to merge, dissolve or make a consolidation of school districts under the Education Law is qualified to such districts as are " adjoining," and hence there is no authority to consolidate two school districts which

are bounded and separated by the waters of a navigable bay over half a mile wide over which there is no regular means of communication. As the school districts are bounded by the shore line they cannot be deemed to extend and meet in the middle of the bay.

The word "adjoining" means touching or contiguous as distinguished from lying near or adjacent.

A trustee of the dissolved school district has a right to maintain in his official capacity an action to restrain such illegal consolidation of the school districts.

Moreover, he may maintain such action as a taxpayer, as the consolidation involves an illegal change of municipal boundaries.

The decision of the Commissioner of Education as to the construction of the Education Law is reviewable by the courts, for an attempt to endow him with final judicial powers would be unconstitutional.

An objection that the plaintiff in his summons did not name himself as school district trustee cannot be taken for the first time upon appeal.

KELLY, J., dissented.

APPEAL by the plaintiff, George Bullock, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Nassau on the 21st day of September, 1917, dismissing the complaint upon the merits upon the decision of the court after a trial at the Nassau Special Term.

Plaintiff is a taxpayer in school district No. 7 in the town of Oyster Bay. Besides suing in that capacity, he is the sole trustee of said school district No. 7 of Oyster Bay, as has been found by the Special Term.

Plaintiff asks a judgment annulling the order of December 7, 1916, made by defendant Cooley as district superintendent of the first supervisory district of Nassau county, by which school districts No. 7 and No. 10 are dissolved and the territory thereof is annexed to union free school district No. 9 in the town of Oyster Bay.

District No. 7, also called Centre Island, geographically is a peninsula extending eastward. It touches district No. 6 — a small settlement called Bayville — which is not involved on this appeal. District No. 7 is physically separated from district No. 9 by the waters of Oyster Bay and harbor.

District No. 7 had fallen off in school population. Its school children, seven or eight in number, were conveyed by automobile to the school in district No. 9, where they were taught for certain varying tuition fees paid to district No.

9. Plaintiff's appeal as school trustee to the Commissioner of Education has been dismissed.

School district No. 9 is bounded along the shore of Oyster Bay harbor, and westerly along the shore of Millneck creek. District No. 7 includes all of Centre Island from a line crossing the causeway. The bay waters are not within any school district as officially bounded. Between district No. 7 and district No. 9 the width of Oyster Bay harbor varies from half a mile to a mile. This bay or harbor is an arm of Long Island sound, in which the tide ebbs and flows. There is no ferry between Centre Island and Oyster Bay, and on the Centre Island shore of Oyster Bay there is no public landing. In the winter months storms and ice make Oyster Bay harbor unnavigable. The distance by land from district No. 7 to district No. 9 is six miles.

Notwithstanding the defined limits of these school districts, the learned justice at Special Term considered that for the purpose of carrying out the Education Law, the boundaries of districts 7 and 9 might be regarded " as extending beyond the respective shore lines and meeting in the intervening body of water." (100 Misc. Rep. 505.)

*William N. Dykman* [*Alfred T. Davison* and *James K. Foster* with him on the brief], for the appellant.

*Alfred M. Schaffer* [*Henry A. Uterhart* with him on the brief], for the respondents James S. Cooley and The Board of Education of Union Free School District No. 9.

A brief also was submitted by *Frank B. Gilbert*, for the Commissioner of Education.

PUTNAM, J.:

The authority to merge, dissolve and make a consolidation of school districts in the Education Law is qualified to such districts as are " adjoining." (Consol. Laws, chap. 16 [Laws of 1910, chap. 140], §§ 128, 129.) I am unable to reach the view that district No. 7, composed of Centre Island, " adjoined " union free school district No. 9. The term " adjoining " is stricter than " adjacent," since to " adjoin," the districts must touch.

In *Matter of Ward* (52 N. Y. 395 [1873]) the court ANDREWS, J., said (p. 397): " The word ' adjoining ' in its

etymological sense, means touching or contiguous, as distinguished from lying near or adjacent. (Crabb's English Synonyms.) And the same meaning has been given to it when used in statutes. (*Rex* v. *Hodges*, 1 Mood. & Malk. 341; *Peverelly* v. *People*, 3 Park. Cr. R. 59; *Holmes* v. *Carley*, 31 N. Y. 289.) "

In *Peverelly* v. *People* (3 Park. Cr. Rep. 59), where the appellant had been indicted for arson in the second degree for setting fire to a warehouse " adjoining " a dwelling, MITCHELL, P. J., said: " The term ' adjoining ' is used in its strict sense, as indicating actual contact, in the law as to division fences (1 R. S. 553, §§ 30, 31, 33),* and in section four hundred and ·one of the Code,* prescribing the counties in which motions shall be made, and probably in other statutes." Crabbe's Synonyms: " What is *adjoining* must touch in some part: * * * What is *contiguous* must be fitted to touch entirely on one side: * * * Lands are *adjacent* to a house or town; fields are *adjoining* to each ·other; houses *contiguous* to each other." (See *Holmes* v. *Carley*, 31 N. Y. 289, adjoining towns.)

Where the right to lay sewers was limited to an " adjoining township or municipality," Judge GARRISON said that to evade such expression by trying to hold that Millburn " adjoined " South Orange " is to deny to words any fixed or known meaning or to strip an important part of the enactment of all rational purpose." (*South Orange* v. *Whittingham*, 58 N. J. Law, 655.)

Other illustrations are *Clark* v. *Coburn* (108 Me. 26); *Baxter* v. *York Realty Co.* (128 App. Div. 79); *Bardes* v. *Herman* (144 id. 772); *Warth* v. *Herman* (Id. 943). A recent case is *Rehill* v. *East Newark* (73 N. J. Law, 220).

Viewed in the natural, ordinary sense, these school districts are non-contiguous, hence not adjoining, and so are not within the compass of this statute.

Notwithstanding the bounds by shore lines, the court at Special Term has felt compelled to regard these districts as meeting in the middle line of the bay. Such reasoning to extend official bounds for certain objects, such as control of beds of shellfish, or other water rights, might be upheld.

---

* See 1 R. S. 353, §§ 30, 31, 33: Code Proc. § 401.— [REP.

The policy of the Education Law is to bring about a convenient means of school attendance. What might be easy for a lawyer in making a motion in a county adjoining that of the place of trial, is very different from the convenience and safety of children in course of their daily winter school attendance. Neither is an election district, where ballots may be cast perhaps once or twice a year, a fair comparison.

The districts should be contiguous in fact, and not by a theoretical meeting in the midst of an open bay, over which there is no ferry or public means of passage.

There remains the point as to the plaintiff's power and capacity to raise this question. He is not suing solely as a taxpayer. His official duty is as school trustee of the dissolved district. He has a *locus standi* to ask a decision whether his district, and with it his office, have been legally destroyed or merged.

The plaintiff, describing himself as school district trustee of the district merged or dissolved, is clothed with certain powers by the Code of Civil Procedure, section 1926. In fact, as such official, he can enforce a liability created " or a duty enjoined, by law, upon those officers." In our view, the duty was to keep within the law and attempt to annex only contiguous districts. Not questioning *Prankard* v. *Cooley* (147 App. Div. 145), we can affirm plaintiff's right as himself an official charged with a duty toward such school district. But, aside from this, a taxpayer has a right to raise the question of the illegal change of municipal boundaries. Thus the attempt to exclude from the village of Glen Park territory outside the bounds of a union free school district was open to successful attack by a non-resident taxpayer (*Steele* v. *Village of Glen Park*, 193 N. Y. 341), although the school district in its corporate capacity had failed to maintain such injunction. (*Union Free School District* v. *Village of Glen Park*, 109 App. Div. 414.)

This leaves for consideration the finality of the decision of the Commissioner of Education under section 880 of the Education Law. If such ruling or decision on the construction of a statute were made beyond court review, then such legislation would be clearly unconstitutional, as the Constitution has provided for no judicial powers to be conferred

by legislation (except local officers and inferior courts) beyond the specific courts enumerated in article 6 of the Constitution. (*People ex rel. Light* v. *Skinner*, 159 N. Y. 162; *People ex rel. Merrall* v. *Cooley*, 75 Misc. Rep. 188, 191.)

If it be urged that in this summons plaintiff did not name himself as school district trustee (Code Civ. Proc. § 1929), I think this is not now available.

While the administrative control and regulation of the State educational system are placed in the State Commissioner of Education, his powers and those of the school trustees and superintendents must be limited by the statutes. Such attempted merger of school districts which were not " adjoining " was against the words of sections 128 and 129 of the Education Law. Plaintiff is, therefore, entitled to a determination declaring invalid such order of defendant Cooley purporting to dissolve union free school districts Nos. 7 and 10, and to unite such territory to union free school district No. 9 of the town of Oyster Bay, to take effect on and after January 1, 1917, and to a judgment restraining defendants from the enforcement of such order.

The judgment of the Special Term, with the three findings of fact numbered 1, 2 and 3, should, therefore, be severally reversed, and plaintiff should have judgment for the relief prayed for in the complaint, with his costs in both courts.

JENKS, P. J., MILLS and BLACKMAR, JJ., concurred; KELLY, J., dissented, and voted to affirm, upon the grounds stated in the opinion of Mr. Justice MANNING at Special Term [100 Misc. Rep. 505], and for the additional reason that the action of the defendants and the State Commissioner of Education with reference to the consolidation of the school districts is not reviewable in the present taxpayer's action. (*People ex rel. Bd. of Education* v. *Finley*, 211 N. Y. 51, 57; *Welker* v. *Lathrop*, 210 id. 434; *Prankard* v. *Cooley*, 147 App. Div. 145.)

Judgment of the Special Term and the three findings of fact numbered one, two and three, severally reversed, and judgment rendered for plaintiff for the relief prayed for in the complaint, with his costs in both courts. Order to be settled on notice